# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF TEXAS

Civil Action No. **3 - 2 0 C V 1 6 1 7 - L**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 1 6 2020

CLERK, U.S. DISTRICT COURT
By_____
Deputy

WINSTON WESLEY NOLES                                      , Plaintiff,

v.

STEPHANIE OSBORN                                            , Defendant.
POLICE OFFICER, ROYSE CITY, TX
in her individual capacity

---

## COMPLAINT AND JURY DEMAND

---

## A. PLAINTIFF INFORMATION

Plaintiff          **WINSTON WESLEY NOLES**          is a citizen of THE UNITED STATES
who presently resides at the following address:

ADDRESS: 11452 County Road B, Manzanola, Colorado 81058

TELEPHONE: 214-874-5605
· EMAIL: WinstonOttoNoles@gmail.com

## B. DEFENDANT(S) INFORMATION

Defendant          **STEPHANIE OSBORN**          is a citizen of THE UNITED STATES
who may presently reside at:
With offices at: 100 W Main St, Royse City, TX 75189
IN THE STATE OF COLORADO, UNITED STATES OF AMERICA

**Page 1 of 24**

## C. JURISDICTION

Jurisdiction is asserted pursuant to following statutory authorities:

28 U.S.C. §§ 1331, 1343 and 1391

42 U.S.C. § 1988

42 U.S.C. § 1983

## D. STATEMENT OF CLAIM(S)

### SUMMARY OF VIOLATIONS FOR WHICH RELIEF IS SOUGHT

**FIRST CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> UNLAWFUL SEARCH – WARRANTLESS SEARCH FOR ACTIVE CAMERA
> FOURTH AMENDMENT

**SECOND CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> UNLAWFUL SEIZURE – WARRANTLESS SEIZURE OF ACTIVE CAMERA
> FOURTH AMENDMENT

**THIRD CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> FREE SPEECH / FREE PRESS; CENSORSHIP – BROADCAST TERMINATION
> FIRST AMENDMENT

**FOURTH CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> PRIOR RESTRAINT – OBSTRUCT GATHERING CONTENT
> FIRST AMENDMENT

**FIFTH CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> DUE PROCESS – PROPERTY DEPRIVATION, CONTENT DESTRUCTION
> SUBSTANTIVE, PROCEDURAL VIA THE FOURTEENTH AMENDMENT

**SIXTH CLAIM FOR RELIEF:**
> 42 U.S.C. § 1983
> DUE PROCESS – EVIDENCE TAMPERING
> SUBSTANTIVE, PROCEDURAL VIA THE FOURTEENTH AMENDMENT

## COMPLAINT AND JURY DEMAND

Plaintiff, Winston Wesley Noles, Pro Se, respectfully alleges for his **Complaint and Jury Demand** as follows:

## INTRODUCTION / STATEMENTS OF FACT

1.        On 2019AUG26 at about 1600HRS, Plaintiff stopped to set up camp for the evening with his two children, Naomi (9yo girl) and Issac (6yo boy).

2.        Plaintiff is a divorced father who enjoys an amicable relationship with his ex-wife, who is the mother of their two children, and pursuant to their uncontested divorce decree and orders, the two enjoy fully shared joint custody and parenting responsibilities of the children.

3.        Plaintiff had just driven directly through from Denver, Colorado on the occasion that he had court obligations in Royse City Municipal Court and Rockwall County Court the following few days.

4.        Both children had accompanied Plaintiff on his summer-long travels and relocation to Denver, Colorado.

5.        Plaintiff had lived in the Royse City region from the preceding approximately fifteen years.

6.        As such, Plaintiff was well aware of the area, and selected a location to camp for the evening which he knows to be public property, and which he had previously camped out for a night or two on numerous occasions over previous fifteen years without any issues.

7.        The selected a location is along East County Line Road where it intersects with North Church Street, which, although now is a well-maintained dirt roadway, was previously a paved highway known as the old county line road.

8.      This public roadway and easement forms a political boundary separating Rockwall County from Collin County, along the public easement.

9.      Upon arrival, Plaintiff initially parked his truck under the shade of the lone tree available such that he could easily see the Royse City Courthouse about one mile birds-eye away.

10.      The location Plaintiff selected is approximately one mile from available restroom, water, food or medical services.

11.      As Plaintiff was setting up the pop-up camper, a man drove up on his ATV to inquire about Plaintiff's actions and intentions.

12.      The man explained he lived across the field to the south a few houses from the end of the lane, and that he was intending to go bird-hunting the coming Sunday.

13.      The two men had a cordial conversation wherein Plaintiff explained he was only here for court appearances the next few days and would be returning to Colorado long before Sunday..

14.      The man appeared satisfied with Plaintiff's explanation and left.

15.      Plaintiff continued to set up his camper, rest, and prepare dinner for the children; this included separating the camper from the truck and re-positioning the truck – now facing west toward the end of the county line road.

16.      Issac elected to take a nap in the back of the air-conditioned truck, while Naomi recoiled into the camper and played her video games, watched movies, or listened to music.

17.      Around 2100 hours, Plaintiff observed several people moving around with lights far across the field, approximately a quarter mile away, near the residential area the man had described earlier as his home.

18.      Plaintiff was not particularly interested or concerned as it was not impacting his experience in any significant way.

19.      Plaintiff assumed the activities to be merely kids joyriding and enjoying the open field on a warm night or residents engaged in similar activities.[1]

20.      Sometime around 2130 the lights stopped, although Plaintiff did not notice the exact moment.

21.      Then around 2145 Plaintiff observed some lights again, but this time at the west end of the county line road.

22.      The lights did not move for a long period of time – maybe ten or fifteen minutes.

23.      Unsure what these lights represented – be they kids joyriding, neighbors, the gentleman from earlier, potential co-campers, or possibly law enforcement making rounds of the area, Plaintiff decided to commenced a live-stream video on his YouTube channel, "Otto The Watchdog".

24.      Plaintiff regularly broadcasts live and is a self-syndicated journalist publishing regularly on multiple social media platforms where he enjoys thousands of loyal subscribers.

25.      Eventually, another vehicle approached and appeared to join the others at the end of the road.

26.      Soon the lights began traveling down the county line road toward Plaintiff's direction at a very hgh rate of speed.

---

1   Plaintiff would later learn that the wife of the man he spoke with, several hours later, became paranoid (her word) that Plaintiff might very likely be some pedophile trafficking children.  This was largely because Naomi is Hispanic and much darker complected than either Issac or Plaintiff.  The wife called police for a welfare check claiming (falsely) that the family was camping without running water or grid-electricity and that Issac was sleeping in the truck in the heat of the afternoon with windows rolled up (which was true – to keep the air-conditioned cab cool).  The husband was so unconcerned that he could not be bothered to wake up and speak to officers.  And so Defendant Osborn and the wife spun a hideous tale of dangers presuming Plaintiff to be guilty of their worst fears.  Osborn waited for a rifleman to arrive before ambushing the family in the night.

27.        As the vehicles rapidly and recklessly approached in the dark, Plaintiff was concerned they joyriders may not notice his campsite with sufficient time to stop or safely maneuver around.

28.        To ensure the drivers were aware there was another vehicle potentially in their direct path, Plaintiff activated his vehicle's headlamps as a signal.

29.        Plaintiff also stepped out of his vehicle to greet the new arrivals and shined a small green key-chain flashlight in a welcoming manner in their direction.

30.        The oncoming vehicles suddenly activated blinding forward lights in the direction of Plaintiff as they haphazardly screeched to a halt some 50 feet or so in front of Plaintiff.

31.        Plaintiff could not see any details of the vehicles because he was completely blinded by their bright forward lights.

32.        Plaintiff asked: "WHAT ARE YOU!?!?!"

33.        Plaintiff could barely make out a male voice shouting at him over the stopping vehicle noises.

34.        Plaintiff was able to hear the phrase "PUT THAT LASER DOWN!"

35.        Plaintiff stepped away from his open door with his hands up and replied: "IT'S NOT A LASER! IT'S A FLASHLIGHT!"

36.        Contemporaneously, Plaintiff turned off the flashlight, keeping his hands clearly visible.

37.        Plaintiff complied with the male voice ordering him to step away from his vehicle.

38.        Plaintiff again called out asking who these people were.

39.        The male voice now ordered Plaintiff to move toward his voice.

40.     Plaintiff, now becoming concerned for his children, and not wishing to leave his children alone in this rather uneasy situation, attempted dialog to gain clarification; he stated he was not sure if he wanted to come to the voices and advised the people that he had children, which they were scaring.

41.     The male voice insisted more angrily that Plaintiff move toward him.

42.     Plaintiff unable to see the terrain directly in front of him due to the blinding lights, nevertheless did begin waling toward the voice, slowly but deliberately.

43.     The male voice continued to order Plaintiff to come closer to his voice until Plaintiff was standing somewhere in the middle of the space between their vehicles, keeping hands in the air the entire time.

44.     The male voice ordered Plaintiff to get on his knees and put his hands behind his head.

45.     Plaintiff asked what this was all about, why they were there, and what their purpose was.

46.     The male voice repeated his commands for plaintiff to get to his knees with more emphasis.

47.     Plaintiff could now see the shape which appeared to him to be a man pointing a shotgun directly at him.

48.     Plaintiff dropped to his knees in terror.

49.     A female officer, later identified as Defendant Stephanie Osborn, came running toward Plaintiff, and then also a male officer, and the two placed Plaintiff in handcuffs as his daughter now began screaming in sheer terror.

50.     Plaintiff repeatedly demanded to know who they were and what this was about.

51.     Osborn finally stated they were Royse City Police.

52.         Plaintiff acknowledged their status as law enforcement officers and again demanded to know what he had done wrong.

53.         The officers would not answer Plaintiff's questions.

54.         Plaintiff reiterated he had children and pleaded with the officers to stop scaring them.

55.         Plaintiff continued to ask what the officers were doing out there and why he was being arrested.

56.         The officers stated, in a most contemptuous tone of voice, that they too wanted to know what Plaintiff was doing out here.

57.         Officers insisted Plaintiff was "NOT UNDER ARREST", but placed him, handcuffed, in the back of what Plaintiff could now see was a patrol vehicle.

58.         Plaintiff very boldly and clearly stated that he did not consent to any searches of seizures of his person or property on his way to the patrol vehicle.

59.         Officers repeatedly asked Plaintiff questions, which he declined to answer pursuant to the Fifth Amendment to the Constitution for the United States.

60.         Plaintiff watched from the patrol vehicle as the officers opened doors, and lifted cooler lids, lifted tarps and other objects, and conducted clearly beyond "plainly visible" searches of his vehicle, camper, and other property, and questioned his children.

61.         Plaintiff very clearly observed Defendant Osborn enter his truck on the driver's side, occupy the driver's seat area, and use her hands to manipulate the video/audio broadcasting and archiving equipment mounted on his rear-view mirror – the same device he had initiated his live-stream broadcast just prior to their arrivals.

62.         Plaintiff would later learn that his ex-wife, and mother of the two children, was on the phone with Defendant Osborn.  She had called Naomi when she heard her scream.

63.         The Mother spoke with Osborn and at one point informed her that she was aware of what was going on because she regularly watches Plaintiff's live-stream broadcasts, as was doing so this evening when she heard he daughter scream.

64.         It was at this information that Defendant Osborn immediately initiated a warrantless search for the broadcasting device, quickly located the device inside the truck, and then immediately, and without any warrant or probable cause, seized the device, fumbled with the controls, and ultimately terminated the live-stream broadcast and the archive recording of the incident.

65.         Defendant Osborn had activated her body-worn camera device prior to arrival which captured the exchange with Plaintiff's ex-wife, and Osborn's subsequent immediate search and seizure of Plaintiff's active broadcasting and archive recordings device and the termination of the broadcast and archive recording.

66.         Osborn is recorded on her Body-Worn Camera Device multiple times IMPROPERLY asserting justification for the search, seizure and termination of Plaintiff's recordings as "Officer Safety".

67.         Plaintiff had every right to record and/or broadcast this rather unusual incident, where he and his family were terrorized and ambushed in the dark by officers, guns already drawn down at him, without any explanation as to the purpose of the assault.

68.         Considering the fact Plaintiff did not actually know who was barreling recklessly down the roadway in his direction, Plaintiff had particular interest in recording the pending unknown encounter.

69.         And considering this encounter ultimately turned out to be LAW ENFORCEMENT – Plaintiff's rights to record the interactions are of extremely high importance and absolute.

70.         Had there been, by chance, a third-party bystander, who was engaged in the broadcast and recording of the incident, that third person's activities thereof would be

ABSOLUTELY PROTECTED under the First Amendment of the Constitution for the United States.

71.     Such a third person's rights to be free from unreasonable searches and seizures would be equally protected under the Fourth Amendment of the Constitution for the United States.

72.     Defendant Osborn would have had absolutely no authority to search such a third person, seize his device, or terminate his broadcast / recording.

73.     Plaintiff's children would have had equal standing to broadcast / record the encounter[2].

74.     Any search or seizure without a warrant specifying the place to be searched and the article to be seized ordered by a judicial officer upon a finding of probable cause as supported by affirmation or oath is presumed to be unlawful and in violation of the Fourth Amendment to the Constitution for the United States.

75.     Because Plaintiff was "CLEARLY NOT UNDER ARREST" as repeatedly stated by each officer, Defendant Osborn cannot claim any exceptions to the warrant requirements for search and seizure of Plaintiff's property.

76.     In fact, Osborn is very conservative and restrained in her actions to "search" plaintiff's property and states near the end of the scene that she did not open any of the numerous coolers Plaintiff had around the site to search for water or food provisions because she "was not sure where her search and seizure tights were" in this situation. (although the other officers were not so guarded and opened many containers and coolers and doors, etc).

---

2   As a matter of fact, Naomi made multiple attempts to gain control of her father's camera device in an attempt to restart the broadcast but was discovered and prevented from doing so each time. In fact, Osborn became rather irritated by these obvious attempts and ultimately prevented Naomi from accessing the vehicle and the device. Osborn would use these attempts to prejudicially claim that the children were "TRAINED" and "BRAINWASHED" in furtherance of her belief Plaintiff was trafficking children.

77.    CLEARLY, by her own admissions, Defendant Osborn KNEW she did not have the authority under the circumstances to enter Plaintiff's vehicle, search for his broadcasting equipment, take control thereof, and terminate his broadcast and recording.

78.    Citizens recording or live-streaming law enforcement in performance of their public duties from public places is a VERY WELL ESTABLISHED RIGHT.

79.    Plaintiff regularly broadcasts stories and interactions with law enforcement and government officials.

80.    Plaintiff's stories are of great public concern as they contain content about police abuse and corruption.

81.    Plaintiff had several hundred live, interactive, viewers at the time the stream was terminated.

82.    Defendant Osborn violated Plaintiff's rights to Free Speech secured by the First Amendment when she terminated Plaintiff's broadcast and recording.

83.    Defendant Osborn violated Plaintiff's rights to Free Press secured by the First Amendment when she abruptly halted Plaintiff's broadcast.

84.    Defendant Osborn violated Plaintiff's rights to be free from unreasonable searches secured by the Fourth Amendment when she entered Plaintiff's vehicle and conducted a search for his broadcast / recording equipment..

85.    Defendant Osborn violated Plaintiff's rights to be free from unreasonable seizures secured by the Fourth Amendment when she took control of Plaintiff's broadcast / recording equipment and terminated his broadcast / recording.

86.    Defendant Osborn violated Plaintiff's rights to not be deprived of life, liberty or property without the Due Processes of Law secured by the Fourteenth Amendment and others when she terminated Plaintiff's broadcast and archive recording thus destroying Plaintiff's collection of content and evidence recordings.

87.     Defendant Osborn violated Plaintiff's rights to the Due Processes of Law for subsequent criminal and/or civil litigation secured by the Fourteenth Amendment and others when she tampered with Plaintiff's evidence being captured by his broadcast and recording processes and equipment.

88.     Defendant Osborn committed each of these numerous violations while acting under color of state law and authority, as she wore the uniform of a Royse City Police Officer and asserted she was in fact a Royse City Police Officer.

89.     Plaintiff has standing to assert these claims for relief for the numerous injuries he suffered, and continues to suffer, as a direct and proximal result of Defendant Osborn's unlawful actions 2019AUG26 to search for and seize his broadcast / recording equipment and terminate his broadcast / recording.

90.     Plaintiff brings these valid causes for action against Defendant Osborn in her personal, individual capacity pursuant to 42 U.S.C. § 1983 – deprivation of rights under color of law.

91.     Plaintiff seek relief for the following enumerated claims:

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 1983 –FOURTH AMENDMENT VIOLATION
## UNLAWFUL SEARCH – WARRANTLESS SEARCH FOR ACTIVE CAMERA
## (AGAINST DEFENDANT STEPHANIE OSBORN)

92.     Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

93.     Plaintiff was engaged in lawful activities throughout the entire incident.

94.     Plaintiff was on a public easement on the boarder of Rockwall County and Collin County when he was engaged in a live-streamed broadcast via YouTube and creating an archive recording of his story of public concern.

95.     Plaintiff had the same lawful authority to be present along East County Line Road / North Church Street that any other member of the general public would have at that time.

96.     Defendant Osborn had no knowledge of any warrants or orders signed by any judicial officer authorizing any searches of Plaintiff's vehicle for any camera, broadcast or recording equipment.

97.     Defendant Osborn knew, or certainly should have known, Plaintiff's broadcast and recording actions did not give rise to any probable cause that any crime was being, had been, or would imminently likely be committed.

98.     Defendant Osborn acted under full color of state law when she entered Plaintiff's vehicle and searched for his active camera, broadcast equipment without any legitimate lawful authority to do so.

99.     Plaintiff had a reasonable expectation of privacy inside his personal vehicle when he was not under arrest at the time and he had expressly advised Osborn she did not have any consent to search his person or property.

100.    Defendant Osborn's actions to deprive Plaintiff of his liberty and proporty interests were unlawful.

101.     Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully searched Plaintiff's property.

102.     Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful search of Plaintiff's property for any active camera, broadcast or recording equipment.

103.     Defendant Osborn's conduct violated clearly established rights secured for Plaintiff by the Fourth Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

104.     Plaintiff seeks relief for these injuries sustained when on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully acting under full color of state law, unlawfully searched Plaintiff's property which Plaintiff had full expectation of privacy, without any warrant, probable cause, or other legitimate lawful authority what so ever to do so, in search of Plaintiff's active camera, broadcast, or recording equipment.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 - FOURTH AMENDMENT
## UNLAWFUL SEIZURE – WARRANTLESS SEIZURE OF ACTIVE CAMERA
## (AGAINST DEFENDANT STEPHANIE OSBORN)

105.    Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

106.    Defendant Osborn had no knowledge of any warrants or orders signed by any judicial officer authorizing any seizures of any specified camera, broadcast or recording equipment belonging to Plaintiff.

107.    Defendant Osborn knew, or certainly should have known, Plaintiff's broadcast and recording actions did not give rise to any probable cause that any crime was being, had been, or would imminently likely be committed.

108.    Defendant Osborn acted under full color of state law when she took physical control of Plaintiff's active camera, broadcast/ recording equipment without any legitimate lawful authority to do so.

109.    Plaintiff had a reasonable expectation his equipment would be secure and unmolested where he was not under arrest and he had expressly advised Osborn she did not have any consent to search his person or property.

110.    Defendant Osborn's actions to deprive Plaintiff of his property interests were unlawful.

111.    Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully seized Plaintiff's broadcast / recording equipment.

112.    Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful seizure of Plaintiff's active camera, broadcast or recording equipment.

113.        Defendant Osborn's conduct violated clearly established rights secured for Plaintiff by the Fourth Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

114.        Plaintiff seeks relief for these injuries sustained when on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully acting under full color of state law, unlawfully seized Plaintiff's property – his active camera, broadcast or recording equipment - which Plaintiff had full expectation of privacy, without any warrant, probable cause, or other legitimate lawful authority what so ever to do so, attempting to terminate Plaintiff's active YouTube broadcast and archive recording.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –FIRST AMENDMENT
### FREE SPEECH / FREE PRESS; CENSORSHIP;
### BROADCAST TERMINATION
### (AGAINST DEFENDANT STEPHANIE OSBORN)

115.　　　Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

116.　　　Defendant Osborn acted under full color of state law when she terminated Plaintiff's broadcast and archive recording without any legitimate lawful authority to do so.

117.　　　Defendant Osborn constructively censored Plaintiff's message of great public concern when she abruptly terminated Plaintiff's live broadcast of this police encounter while hundreds of live interactive viewers were actively participating in the broadcast.

118.　　　Defendant Osborn's actions to censor Plaintiff's message were unlawful.

119.　　　Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully halted Plaintiff's speech – his live broadcast on his YouTube Channel.

120.　　　Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful stopping of Plaintiff's speech.

121.　　　Defendant Osborn's conduct violated clearly established rights secured for Plaintiff by the First Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

122.　　　Plaintiff seeks relief for these injuries sustained, when, on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully, acting under full color of state law, unlawfully terminated Plaintiff's speech, live-broadcasting a story on a matter of great public concern on his YouTube Channel to hundreds of live interactive viewers.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –FIRST AMENDMENT VIOLATION
### PRIOR RESTRAINT – OBSTRUCT GATHERING CONTENT
### (AGAINST DEFENDANT STEPHANIE OSBORN)

123.       Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

124.       Defendant Osborn knew, or certainly should have known, Plaintiff's broadcast and recording actions did not give rise to any probable cause that any crime was being, had been, or would imminently likely be committed.

125.       Defendant Osborn acted under full color of state law when she stopped Plaintiff's live broadcast and archive recording without any legitimate lawful authority to do so.

126.       Defendant Osborn prevented Plaintiff from gathering any further content from the perspective, vantage point,  and purview of his recording device when she unlawfully stopped the broadcast / recording actions already underway.

127.       Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully stopped Plaintiff's broadcast / recording.

128.       Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful stopping of Plaintiff's property broadcast / recording.

129.       Defendant Osborn's conduct violated clearly established rights secured for Plaintiff by the First Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

130.       Plaintiff seeks relief for these injuries sustained, when, on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully acting under full color of state law, without any warrant, probable cause, or other legitimate lawful authority what so ever, unlawfully stopped Plaintiff's broadcast / recording of this public law enforcement action.

## FIFTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATIONS
## DUE PROCESS – PROPERTY DEPRIVATION, CONTENT DESTRUCTION
## (AGAINST DEFENDANT STEPHANIE OSBORN)

131.        Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

132.        Plaintiff had every expectation and anticipation that his recording captured and archived from his live broadcast on his YouTube channel of this police encounter may likely become relevant and material evidence in a criminal or civil proceeding.

133.        Defendant Osborn was also keenly aware of the high importance of video and/or audio recordings as potential relevant material in criminal or civil litigation as she had an active body-worn camera, dash-mounted camera and in-cruiser mounted camera for the majority of her encounter with Plaintiff's family on 2019AUG26.

134.        Defendant Osborn  KNEW OR CERTAINLY SHOULD HAVE KNOWN that an active broadcasting device was contemporaneously creating an archive recording of the events captured.

135.        Thus, Defendant Osborn knew or should have known that terminating the live broadcast would also deprive Plaintiff from his own content for possible story or evidence.

136.        Defendant Osborn acted under full color of state law when she terminated Plaintiff's broadcast and archive recording, depriving Plaintiff from gathering further content.

137.        Defendant Osborn's actions to deprive Plaintiff of his recording interests were unlawful.

138.        Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully terminated Plaintiff's broadcast and archive recording thus obstructing and preventing Plaintiff from rightfully collecting and preserving his own independent recordings.

139.        Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful obstruction and destruction of Plaintiff's own recorded content when she terminated the live broadcast / archive recording.

140.        Defendant Osborn's conduct preventing Plaintiff from gathering content and recordings without Due Processes of Law violated clearly established rights to the Substantive and Procedural Due Processes of Law ultimately secured for Plaintiff by the Fourteenth Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

141.        Plaintiff seeks relief for these injuries sustained when on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully acting under full color of state law, unlawfully searched Plaintiff's property which Plaintiff had full expectation of privacy, without any warrant, probable cause, or other legitimate lawful authority what so ever to do so, in search of Plaintiff's active camera, broadcast, or recording equipment depriving him of gathering content and recordings.

## SIXTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 –FOURTEENTH AMENDMENT VIOLATION
## DUE PROCESS – EVIDENCE TAMPERING
## (AGAINST DEFENDANT STEPHANIE OSBORN)

142.      Plaintiff incorporates herein by reference the allegations made in each of the preceding paragraphs as if each were set fourth here verbatim.

143.      Plaintiff had every expectation and anticipation that his recording captured and archived from his live broadcast on his YouTube channel of this police encounter may likely become relevant and material evidence in a criminal or civil proceeding.

144.      Plaintiff has a well established right to gather, collect, preserve, and produce as relevant material evidence in any criminal or civil action in any legitimate court under the Constitutions for the United States or her numerous States.

145.      Defendant Osborn was also keenly aware of the high importance of video and/or audio recordings as potential relevant material in criminal or civil litigation as she had an active body-worn camera, dash-mounted camera and in-cruiser mounted camera for the majority of her encounter with Plaintiff's family on 2019AUG26.

146.      Defendant Osborn  KNEW OR CERTAINLY SHOULD HAVE KNOWN that an active broadcasting device was contemporaneously creating an archive recording of the events captured.

147.      Thus, Defendant Osborn knew or should have known that terminating the live broadcast would also deprive Plaintiff from his own capturing and preserving his own independent, not in law-enforcement custody or control, objective evidence of the events of the incident involving Osborn, her fellow officers and Plaintiff's family.

148.      Defendant Osborn acted under full color of state law when she terminated Plaintiff's broadcast and archive recording.

149.      Defendant Osborn's actions unlawfully terminating Plaintiff's broadcast and archive recording deprived Plaintiff of his potential evidence interests.

150.        Defendant Osborn acted intentionally, willfully, wantonly, knowingly, recklessly and/or neglectfully when she unlawfully terminated Plaintiff's broadcast and archive recording thus tampering with and preventing Plaintiff from collecting and preserving his own independent evidence for anticipated likely criminal or civil litigation.

151.        Plaintiff sustained injuries, damages and/or losses to liberty and/or property directly and indirectly as a proximal result of Defendant Osborn's unlawful tampering with and destruction of Plaintiff's archive recording thus depriving Plaintiff of his own independent evidence for anticipated likely criminal or civil litigation when she terminated the live broadcast / archive recording.

152.        Defendant Osborn's conduct violated clearly established rights to the Substantive and Procedural Due Processes of Law ultimately secured for Plaintiff by the Fourteenth Amendment to the Constitution for the United States, which any reasonable officer in her position knew, or certainly should have known.

153.        Plaintiff seeks relief for these injuries sustained when on 2019AUG26, Defendant Osborn, intentionally, knowingly, willfully, deliberately, wantonly, recklessly, and/or neglectfully acting under full color of state law, unlawfully deprived Plaintiff of his rights to the Due Processes of Law when she terminated Plaintiff's broadcast and archive recording of events which he would have captured preserved and could have ultimately presented as evidence in anticipated likely criminal or civil litigation.

## E.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, losses of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorney's fees and the costs associated with this action, including but not limited to those associated with having to defend against the false criminal charges as well as consultation costs, paralegal costs, investigatory costs, deposition costs, witness fees, expert witness fees, on all claims allowed by law;

(f) Pre- and post- judgment interest at the lawful rate; and

(g) Any further relief this Court deems just and proper, and any other relief allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 12th_ day of June, 2020.

_____
(Plaintiff's Original Signature)

_____
(Street Address)
11452 County Road B
(City, State, ZIP)
Manzanola, Colorado 81058
(Telephone Number)
214-874-5605

Page 23 of 24

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff  Otero, Colorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Rockwall Texas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

RECEIVED
JUN 16 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:  Unlawful Search and Seizure – Speech Censorship

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  6-11-2020  [signature]

SIGNATURE OF ATTORNEY OF RECORD
NA

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED


**UNITED STATES**
**POSTAL SERVICE®**

# PRIORITY® MAIL

JAN 16 2020

NC

- Date of delivery specified*
- USPS TRACKING™ included to many major international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs declaration label may be required.

  * Domestic only



P S 00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP®



$7.15 US POSTAGE
PRIORITY MAIL
ZONE 4 FLAT-RATE ENVELOPE
CertifiedFees

06280012720013
FROM 81058

stamps.
endicia
09/13/2020

## PRIORITY MAIL 2-DAY™

Winston Noles
Watchdog News Network
11452 County Road B
Manzanola CO 81058-9608  C001

SHIP
TO:  United States District Court
1100 Commerce Street Ste 1452
Dallas TX 75242-1310



### USPS TRACKING #

9405 5118 9956 3547 9997 76

2148745605

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.

This envelope is made from post-consumer waste. Please recycle - again.

* Domestic only.   ** For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.